1

2

3

4

5

6

7

8          **UNITED STATES DISTRICT COURT**

9      **CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

10

11   GERREL LOONEY,                    CASE NO. CV 15-8201 AS

12                  Petitioner,

13        v.                           **MEMORANDUM DECISION AND ORDER OF DISMISSAL**

14   JOSIE GASTELO,[1] Warden

15                  Respondent.

16

17                          **INTRODUCTION**

18

19        On  October  20,  2015,  Gerrel  Looney  ("Petitioner"),  a

20   California state prisoner proceeding pro se, filed a Petition for

21   Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Dkt. No.

22   1).  On February 11, 2016, Respondent filed a Motion to Dismiss,

23   asserting that the only claim raised was partially unexhausted.

24

25   _____

26        [1]     Josie Gastelo, Warden of the California Men's Colony in
     San  Luis  Obispo,  California,  where  Petitioner  is  currently
27   incarcerated, is substituted for G. Swartout, whom Petitioner
     named in his Petition.  Fed. R. Civ. P. 25(d).
28

(Dkt. No. 15). Respondent also lodged documents from Petitioner's state proceedings. (Dkt. No. 16).

On February 16, 2016, the Court found that the claim was partially unexhausted and afforded Petitioner the opportunity to address the defects, voluntarily dismiss the Petition, voluntarily dismiss the unexhausted portion of the claim, or request a stay. (Dkt. No. 18). On June 7, 2016, Petitioner filed a motion to stay, which the Court denied for lack of good cause on June 8, 2016, and afforded Petitioner an opportunity to select any of the other options available. (Dkt. Nos. 23-24).

On December 13, 2016, Petitioner filed another motion to stay, requesting that the Court stay the Petition and hold it in abeyance so that he could exhaust two prosecutorial misconduct claims. (Dkt. No. 41). Respondent filed an opposition on December 28, 2016, and lodged supplemental documents from Petitioner's state proceedings. (Dkt. Nos. 43-44). On June 2, 2017, Petitioner filed a "Motion for a Stay (Move to Amend Petition Stay Pending Completion Exhaustion Declaration of Petition)" (Dkt. No. 56), which the Court construed as a Reply to the Opposition ("Reply") (Dkt. No. 57). In his Reply, Petitioner clarified that he was "asking for Option 3 dismissing the unexhausted portion of Ground One, and moving for a stay of the action pursuant to _Kelly_." (Reply at 9). Petitioner also appeared to seek leave to amend the Petition in order to add claims for ineffective assistance of counsel and due process violations - claims that were alleged in an unfiled California

Supreme Court habeas petition attached to the motion. On June 13, 2017, Respondent filed a Sur-Reply. (Dkt. No. 58). On August 14, 2017, Petitioner filed an objection to the Sur-Reply, in which he stated that he had recently filed a second habeas petition with the California Supreme Court.[2] (Dkt. No. 59).

On August 24, 2017, the Court denied Petitioner's motion to stay as moot, denied Petitioner's request for leave to file an amended petition as untimely, and denied Respondent's motion to dismiss, finding that the first California Supreme Court habeas petition exhausted Petitioner's claim.[3] (Dkt. No. 60). The Court found that Plaintiff's first habeas petition filed with the California Supreme Court on April 11, 2016, which presented a claim for "insufficient evidence on all charges that I've been found guilty of," sufficiently challenged the sufficiency-of-the-evidence claim asserted in the Petition. (Id. at 18).

On November 7, 2017, Respondent filed an Answer to the Petition, with an accompanying memorandum of points and authorities. (Dkt. No. 65). Respondent also lodged supplemental documents from Petitioner's state proceedings, including the

---

[2]    The second habeas petition was denied on September 13, 2017. (Lodgment 9).

[3]    The first habeas petition was denied on May 25, 2016. (Lodgment 7).

Clerk's Transcript ("CT") and Reporter's Transcript ("RT").[4]
(Dkt. No. 66). Petitioner did not file a Reply.[5]

The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. (Dkt. Nos. 3, 14, 17). For the reasons discussed below, the Petition is DENIED and this action is DISMISSED with prejudice.

**PRIOR PROCEEDINGS**

On July 19, 2013, a Los Angeles County Superior Court jury, in case number LA072677, found Petitioner guilty of two counts of assault likely to produce great bodily injury (Counts Two and Three), in violation of California Penal Code ("P.C.") § 245(a)(4); one count of simple battery (Count Four), in violation of P.C. § 242;[6] and one count of battery with serious bodily injury (Count Five), in violation of P.C. § 243(d). (CT 114-18). The jury also found true the special allegations that Petitioner inflicted great bodily injury on both victims, in violation of

---

[4]    Respondent has labeled multiple documents as Lodgments 5 and 6. (Dkt. Nos. 44, 66). The Court will refer to Lodgments 5 and 6 in Dkt. No. 66 as 5A and 6A, respectively.

[5]    On November 7, 2017, the Court gave Petitioner until December 7, 2017, to file a Reply. (Dkt. No. 67).

[6]    As to Count Four, the jury found Petitioner not guilty of felony battery with serious bodily injury but guilty on the lesser included offense of simple battery, a misdemeanor. (CT 116-17).

4

P.C. § 12022.7.[7] (CT 114-15).  On March 6, 2014, the trial court sentenced Petitioner to eleven years in state prison.  (Lodgment 1).

Plaintiff appealed his convictions and sentence to the California Court of Appeal (Second Appellate District, Division Five), which affirmed the convictions, but reversed and remanded as to the sentence imposed by the trial court, in an unpublished opinion filed January 15, 2015.  (Lodgments 2, 10-12).  At resentencing, the trial court sentenced Petitioner to nine years in state prison.  (Lodgment 5A).  On February 18, 2015, Petitioner filed a petition for review in the California Supreme Court, which denied the petition without comment on March 25, 2015. (Lodgments 3-4).

On April 11, 2016, Petitioner filed a habeas petition in the California Supreme Court ("First Habeas Petition"), which was denied on May 25, 2016, without discussion or citations to authority.  (Lodgments 6A, 7).  On July 3, 2017 Petitioner filed a second habeas petition in the California Supreme Court, which

_____

[7]    The jury also found Petitioner guilty of assault with a deadly weapon (Count One), in violation of P.C. § 245(a)(1).  (CT 113).  The trial court granted a new trial as to Count One and that charge was subsequently dismissed.  (CT 175; Lodgment 2 at 7).

was denied on September 13, 2017, as successive with a citation to <u>In re Clark</u>, 5 Cal. 4th 750, 767-69 (1993).[8]  (Lodgments 8-9).

### FACTUAL BACKGROUND

The following facts, taken from the California Court of Appeal's decision on direct review, have not been rebutted with clear and convincing evidence and must be presumed correct.  28 U.S.C. § 2254(e)(1); <u>Slovik v. Yates</u>, 556 F.3d 747, 749 n.1 (9th Cir. 2009).

**A.   Prosecution's Case**

*1.   Tarlan Hendi's Testimony*

On the morning of November 27, 2012, Tarlan Hendi was at Pierce College in Woodland Hills. She went to the computer lab in the library to type a paper. She found a seat but, as she sat down, her backpack accidentally hit the back of the chair in which [Petitioner] was seated. [Petitioner] said, "Watch where you're going" or "Watch what you hit." When Hendi apologized, [Petitioner] responded, "I'm just saying" and then raised his voice and said, "Watch what you hit." Hendi again apologized and then asked, "So why

---

[8]    Denial with a citation to <u>In re Clark</u> indicates that the habeas petition was successive or untimely.  <u>Lakey v. Hickman</u>, 633 F.3d 782, 786 (9th Cir. 2011).

are you basically continuing this?" Hendi also asked [Petitioner] to lower his voice, and he replied, "I can do what I want . . . bitch." Hendi became angry and called [Petitioner]'s mother a bitch. [Petitioner] "grabbed" Hendi's cup of coffee and "spilled it all over her face." Hendi stood up, shocked and angry. Her face burned from the hot coffee.

When [Petitioner] stood up, Hendi moved toward him, "cussing him out." [Petitioner] punched Hendi on the left side of her face, chipping her tooth, and then punched her on the right side of her chin. Hendi heard her classmate say, "Hey you hit a girl," and saw him move between [Petitioner] and Hendi. An altercation then ensued between [Petitioner] and Hendi's classmate. Hendi saw [Petitioner] on top of her classmate punching him, causing him to bleed. [Petitioner] stopped punching the classmate and left the library. Hendi followed [Petitioner] and tried to stop him from leaving. Security personnel arrived and detained [Petitioner].

After the incident, Hendi could not open her jaw for two weeks and "it was very, very painful." Hendi made a dentist appointment to have her tooth repaired.

## 2. *Pouria Mohkami's Testimony*

On the morning of November 27, 2012, Pouria Mohkami and his friend, Hendi, were at Pierce College working on a class project together. They went to the library to use a computer. While they were looking for a place to sit, they passed by [Petitioner] who said, "You touched me." Hendi apologized, but then she and [Petitioner] began arguing and "cussing each other out." [Petitioner] became upset and threw a cup of coffee in Hendi's face. When Hendi, who was upset, moved toward [Petitioner], Mohkami observed [Petitioner] punch her twice on the side of her face.

Mohkami tried to "stop the whole thing," but [Petitioner] punched him in the face "a couple of times." Mohkami tried to punch [Petitioner] and then took him to the ground, at which point bystanders separated the two men.

After the altercation, Mohkami had a "couple of bruises" and a one-inch cut that he "got from the punch." Police officers photographed the cut, and, at trial, Mohkami had a scar on his face from the cut. Mohkami received treatment at the campus nurse's office and was advised to go to the hospital to have the cut stitched and to be examined for a concussion.

On the morning of November 27, 2012, Susan Mollasalehi was in the computer lab in the Pierce College library. When she arrived, she went to the first row of computers and saw [Petitioner] sitting at the first computer. The chair and computer next to [Petitioner] were unoccupied, but Mollasalehi sat at the third computer. [Petitioner] was "watching a video or something" and "was just mesmerizing [sic] to himself." Sometime after Mollasalehi sat down, a man and a woman arrived and the woman pulled out the chair in front of the second computer next to [Petitioner]. She had a backpack on her left shoulder and, when she tried to put her backpack down, she "hit" [Petitioner] with it. The woman immediately apologized, but that created tension between the woman and [Petitioner], who appeared to be upset. [Petitioner] was talking to himself saying, "You should be more careful." Mollasalehi heard the woman apologize "a couple of times." She next heard [Petitioner] call the woman a bitch and observed him take the hot coffee that was in front of the woman and "pour[ ] it on her face." The woman became upset and called [Petitioner]'s mother a bitch, at which point [Petitioner] stood up and turned toward the woman, who also stood up. As the woman and [Petitioner] were facing each other, Mollasalehi saw [Petitioner] punch "her in the face with both hands."

At that point the man who came into the library with the woman intervened. [Petitioner] and the man began fighting and [Petitioner] pulled the man to the floor, knocking down a whiteboard. She then saw [Petitioner] on top of the man "punching him in the face and chest."

Bystanders began "yelling" and somebody called security. [Petitioner] took off his shirt and tried to run out, but the female victim ran after him telling him he could not leave.

**B.    [Petitioner]'s Case**

[Petitioner], who represented himself at trial, testified on his own behalf as follows. On the day of the incident, [Petitioner] had an appointment with a counselor. He was in the library seated at the "last seat . . . in the computer room." He had head phones on and therefore could not hear because of the music to which he was listening. He still had his backpack on. The female and male victims came in. When the female took her backpack off, she hit [Petitioner]. [Petitioner] turned to her and said " 'Can you please say "excuse me?" ' " [Petitioner] then asked the female to "please scoot [her] chair" because she was "inside [his] space." [Petitioner] felt as if the female was "trespassing" and invading his space. The female

replied, "Scoot your fucking chair forward. Then you won't have that problem." [Petitioner] responded, saying, "Are you going to leave it alone," because the female "kept on going." During his verbal exchange with the female, [Petitioner] did say the word "bitch," but he was "talking to himself."

[Petitioner] threw the cup of coffee because the female was "yelling" at him and had not apologized. But he did not "directly throw the cup of coffee at her. [He] just threw it. It had no force. [He] just threw it." The coffee "got on her and got on [[Petitioner]]." The female then "hopped up" and attacked [Petitioner]. The attack made [Petitioner] "get up and throw punches." He only hit the female twice and neither punch was "hard enough to numb or chip a tooth." [Petitioner] did not hit the female in the front of her mouth. No one intervened, [Petitioner] just stopped hitting her "on [his] own."

At that point, the female's male companion became involved, saying "Oh, so you just going to hit her?" The male then attacked [Petitioner] swinging at him and then grabbing him. [Petitioner] broke free and threw punches at the man because he had thrown punches at [Petitioner]. During the altercation, [Petitioner] suffered a scratched lip. Other people then came around and pushed [Petitioner] back into the male causing them

1    both to fall to the ground. People were pulling at

2    [Petitioner]'s backpack as he wrestled with the male.

3    [Petitioner] was trying to break up the fight and was

4    defending himself because he felt "unsafe from all of

5    them." [Petitioner] "then . . . left it alone. [He] put

6    on [his] shirt, [his] backpack, and then [he] left."

7    The female pulled [Petitioner] and tried to prevent him

8    from going downstairs. He grabbed her hands and pushed

9    her off him. As he walked downstairs, the female came

10   back and tried to push him down the stairs. Because

11   [Petitioner] had forgotten his earphones, he went back

12   upstairs to retrieve them, and then went back

13   downstairs and began walking to the "counselor

14   building." At that point, security personnel arrived to

15   investigate the incident. [Petitioner] was arrested and

16   taken to jail.

17

18   (Lodgment 2 at 2-6).

19

20                        **PETITIONER'S CLAIM**

21

22       Petitioner challenges the sufficiency of the evidence to

23   support his convictions on all counts.

24

25       (Petition at 8).[9]

26

_____

27        [9]    The Court cites to the Petition as if was consecutively
     numbered in accordance with the Court's electronic docket.
28

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington v. Richter, 562 U.S. 86, 98 (2011). Under AEDPA's deferential standard, a federal court may grant habeas relief only if the state court adjudication was contrary to or an unreasonable application of clearly established federal law or was based upon an unreasonable determination of the facts. 28 U.S.C. § 2254(d). "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt[.]' " Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citations omitted).

Petitioner raised his sufficiency of the evidence claim as to Counts Three and Five in his petition for review to the California Supreme Court, which denied the petition without comment or citation to authority. (Lodgments 3-4). The Court "looks through" the California Supreme Court's silent denials to the last reasoned decision as the basis for the state court's judgment. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); Cannedy v. Adams, 706 F.3d 1148, 1159, as amended, 733 F.3d 794 (9th Cir. 2013) ("[W]e conclude that Richter does not change our practice

13

of 'looking through' summary denials to the last reasoned decision —- whether those denials are on the merits or denials of discretionary review.") (footnote omitted). Therefore, in addressing Petitioner's sufficiency of the evidence claim as to Counts Three and Five, the Court will consider the California Court of Appeal's reasoned opinion addressing this claim. Berghuis v. Thompkins, 560 U.S. 370, 380 (2010).

Petitioner raised his sufficiency of the evidence claim as to Counts Two and Four in his first California Supreme Court habeas petition, which denied the claim without comment or citation to authority. (Lodgments 6A, 7). Since no state court has provided a reasoned decision addressing the merits of Petitioner's claim, the Court must conduct an independent review of the record to determine whether the state court's ultimate decision to deny this claim was contrary to, or an unreasonable application of, clearly established federal law. Murray v. Schriro, 745 F.3d 984, 996–97 (9th Cir. 2014); Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013). "Crucially, this is not a *de novo* review of the constitutional question." Walker, 709 F.3d at 939; Kyzar v. Ryan, 780 F.3d 940, 949 (9th Cir.), cert. denied, 136 S. Ct. 108 (2015). Rather, where, as here, there is no reasoned decision analyzing Petitioner's constitutional claims, the Court "must determine what arguments or theories . . . could have supported[ ] the state court's decision" and "then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in

a prior decision of this Court." <u>Richter</u>, 562 U.S. at 102; <u>Mahrt v. Beard</u>, 849 F.3d 1164, 1169 (9th Cir. 2017).

**DISCUSSION**

**A.     Sufficiency of the Evidence**

     To review the sufficiency of the evidence in a habeas corpus proceeding, the Court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979) (emphasis in original); <u>Parker v. Matthews</u>, 567 U.S. 37, 43 (2012) (<u>per</u> <u>curiam</u>); <u>see also</u> <u>Coleman v. Johnson</u>, 566 U.S. 650, 656 (2012) (<u>per</u> <u>curiam</u>) ("[T]he only question under <u>Jackson</u> is whether [the jury's] finding was so insupportable as to fall below the threshold of bare rationality."). "[A] reviewing court must consider all of the evidence admitted by the trial court, regardless [of] whether that evidence was admitted erroneously," <u>McDaniel v. Brown</u>, 558 U.S. 120, 131 (2010) (<u>per</u> <u>curiam</u>) (citation omitted), all evidence must be considered in the light most favorable to the prosecution, <u>Lewis v. Jeffers</u>, 497 U.S. 764, 782 (1990); <u>Jackson</u>, 443 U.S. at 319, and if the facts support conflicting inferences, reviewing courts "must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." <u>Jackson</u>, 443 U.S. at 326; <u>Cavazos v. Smith</u>, 565 U.S. 1, 7 (2011)

1  (per curiam). Furthermore, under the AEDPA, federal courts must

2  "apply the standards of [Jackson] with an additional layer of

3  deference." Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir.

4  2005); Boyer v. Belleque, 659 F.3d 957, 964-65 (9th Cir. 2011).

5  These standards are applied to the substantive elements of the

6  criminal offense under state law. Jackson, 443 U.S. at 324 n.16;

7  Boyer, 659 F.3d at 964; see also Johnson, 566 U.S. at 655 ("Under

8  Jackson, federal courts must look to state law for the

9  substantive elements of the criminal offense, but the minimum

10  amount of evidence that the Due Process Clause requires to prove

11  the offense is purely a matter of federal law.") (citation

12  omitted).

13

14  **B.    Relevant California Criminal Law**

15

16      An assault is "an unlawful attempt, coupled with a present

17  ability, to commit a violent injury on the person of another."

18  P.C. § 240.   The California Penal Code further prohibits an

19  assault "by any means of force likely to produce great bodily

20  injury."   P.C. § 245(a)(4); see People v. Covino, 100 Cal. App.

21  3d 660, 668 (1980) ("An assault by means of force likely to

22  produce great bodily injury, is an assault, as to which the force

23  essential to all assaults is of such a nature or degree that the

24  probable result of its application will be the infliction of

25  great bodily injury.").   "Great bodily injury" is defined as "a

26  significant or substantial physical injury."   P.C. § 12022.7(f);

27  see Covino, 100 Cal. App. 3d at 668 ("Great bodily injury is

28  bodily injury which is significant or substantial, not

16

insignificant, trivial or moderate."). Nevertheless, the "significant or substantial physical injury" test "contains no specific requirement that the victim suffer 'permanent,' 'prolonged' or 'protracted' disfigurement, impairment, or loss of bodily function." <u>People v. Escobar</u>, 3 Cal. 4th 740, 750 (1992).

A battery is "any willful and unlawful use of force or violence upon the person of another." P.C. § 242. "If, however, the batterer not only uses unlawful force upon the victim but causes injury of sufficient seriousness, then a *felony* battery is committed." <u>People v. Wade</u>, 204 Cal. App. 4th 1142, 1147 (2012), <u>as modified on denial of reh'g</u> (May 8, 2012) (citation omitted) (emphasis in original). For felony battery, "serious bodily injury" is required. P.C. § 243(d). As used in this section, " 'serious bodily injury' means a serious impairment of physical condition, including, but not limited to, the following: loss of consciousness; concussion; bone fracture; protracted loss or impairment of function of any bodily member or organ; a wound requiring extensive suturing; and serious disfigurement." P.C. § 243(f)(4).

"[A] defendant acts in lawful self-defense if 'one, the defendant reasonably believed that he was in imminent danger of suffering bodily injury . . . or was in imminent danger of being touched unlawfully; two, the defendant reasonably believed that the immediate use of force was necessary to defend against that danger; and three, the defendant used no more force than was reasonably necessary to defend himself against that danger."

People v. Clark, 201 Cal. App. 4th 235, 250 (2011) (citation omitted). "[T]he defendant must actually and reasonably believe in the need to defend," People v. Humphrey, 13 Cal. 4th 1073, 1082 (1996); see People v. Battle, 198 Cal. App. 4th 50, 72 (2011), and must have acted in actual fear of imminent danger to life or great bodily injury, People v. Stitely, 35 Cal. 4th 514, 551 (2005). The defense "is limited to the use of such force as is reasonable under the circumstances." People v. Minifie, 13 Cal. 4th 1055, 1065 (1996). "The right of self-defense is only available to a person who initiated an assault if he has done all of the following: One, he has actually tried in good faith to refuse to continue fighting; two, he has clearly informed his opponent that he wants to stop fighting; and, three, he has clearly informed his opponent that he has stopped fighting." People v. Nguyen, 61 Cal. 4th 1015, 1043 (2015) (citation omitted). However, "[t]he right of self-defense is not available to a person who seeks a quarrel with the intent to create a real or apparent necessity of exercising self-defense." Id. at 1044 (citation omitted). The prosecutor has the burden to prove beyond a reasonable doubt the defendant's use of force was not in lawful self-defense. People v. Tully, 54 Cal. 4th 952, 1028 (2012).

C.  **Assault and Battery Against Hendi**

    1.  **Count Two: Assault Likely To Produce Great Bodily Injury**

Petitioner contends there was insufficient evidence to support the finding in Count Two that he inflicted assault by means likely to inflict great bodily injury on Tarlan Hendi. (Petition at 8-9).

Hendi testified that on the morning of November 27, 2012, she went to the computer lab in the library at Pierce College to type a school paper. (RT 44-46, 73). She found a seat but as she sat down, her backpack accidentally hit the back of Petitioner's chair. (RT 52, 73). Hendi and Petitioner then got into a heated verbal altercation, during which Petitioner picked up Hendi's cup of hot coffee and threw it in her face. (RT 47). Petitioner then punched Hendi twice in the face, chipping her tooth. (RT 47-51). As a result of this altercation, Hendi was taken to the emergency room, was unable to open her jaw for more than two weeks, and required dental work to repair the chipped tooth. (RT 50-51, 67).

Pouria Mohkami testified that on November 27, 2012, he and Hendi were at Pierce College working together on a class project. (RT 73). Petitioner and Hendi got into an argument after Hendi accidently touched Petitioner. (RT 73). Petitioner got upset and threw a hot cup of coffee in Hendi's face. (RT 74).

Petitioner then punched Hendi twice on the side of her face before Mohkami intervened. (RT 74).

Susan Mollasalehi testified that on November 27, 2012, she was in the Pierce College computer lab. (RT 305). She observed Petitioner watching a video on his computer. (RT 306). Sometime later, she saw Hendi and Mohkami enter the lab. (RT 306). Hendi tried to put her backpack on the floor to sit down on the empty chair next to Petitioner, but her backpack accidently hit him. (RT 306-07). Hendi apologized but Petitioner became upset, telling Hendi she should be more careful. (RT 307). Their argument became heated, and Petitioner picked up a cup of hot coffee and poured in on Hendi's face. (RT 307-09). Petitioner then punched Hendi in the face before Mohkami came to her aid. (RT 309-10).

Petitioner, who represented himself at trial, testified that he threw the cup of coffee at Hendi because she was yelling at him and had not apologized. (RT 349). He acknowledged throwing punches at Hendi, but claimed that he only hit her twice. (RT 349). Petitioner claimed that his punches were not "hard enough to numb or chip her tooth." (RT 349).

From the evidence, a rational factfinder could find beyond a reasonable doubt that in striking Hendi twice in the face with his fists, Petitioner used force likely to produce great bodily injury and actually inflicted great bodily injury, supporting the jury's special allegation finding. See <u>People v. Aguilar</u>, 16

20

Cal. 4th 1023, 1028 (1997) ("That the use of hands or fists alone may support a conviction of assault 'by means of force likely to produce great bodily injury' is well established."); People v. Chavez, 268 Cal. App. 2d 381, 384 (1968) ("the cases are legion in holding that an assault by means of force likely to produce great bodily injury may be committed with fists"). "The question of whether or not the force used was such as to have been likely to produce great bodily injury, is one of fact for the determination of the jury based on all the evidence, including but not limited to the injury inflicted." People v. Armstrong, 8 Cal. App. 4th 1060, 1066 (1992) (citation and alteration omitted); see People v. McDaniel, 159 Cal. App. 4th 736, 748–49 (2008) ("Whether a fist used in striking a person would be likely to cause great bodily injury is to be determined by the force of the impact, the manner in which it was used and the circumstances under which the force was applied."). Here, evidence of Hendi's painful jaw and the dental work required to repair her chipped tooth were sufficient for the jury to find that Petitioner used force likely to produce great bodily injury. See People v. Salas, 77 Cal. App. 3d 600, 606 (1978) (evidence that defendant's blows caused broken nose and a tooth to be knocked out were sufficient to support jury's finding that defendant assaulted the victim with intent to produce great bodily injury and that victim suffered great bodily injury). Indeed, a single blow with a fist is sufficient to support a conviction for assault by means likely to produce great bodily injury. In re Nirran W., 207 Cal. App. 3d 1157, 1161–62 (1989) (concluding evidence was "clearly" sufficient to support assault by means of force likely to produce

great bodily injury where defendant punched the victim in the face with sufficient force to knock her down, victim felt "jaw pop out and then back in," and victim's "teeth still did not meet," two months after the attack); see also Escobar, 3 Cal. 4th at 750 (victim need not suffer permanent or even prolonged impairment or loss of bodily function).

Petitioner contends that he did not hit Hendi hard enough to chip her tooth or bust her lip. (Petition at 8). The jury heard Petitioner's testimony in this regard (RT 349-50), but nevertheless convicted him. A federal habeas court cannot reevaluate the credibility of a witness when the court did not observe the witness's demeanor. Marshall v. Lonberger, 459 U.S. 422, 434 (1983). Instead, "it is the responsibility of the jury - not the court - to decide what conclusions should be drawn from evidence admitted at trial," Smith, 565 U.S. at 2, and this Court "must respect the province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts by assuming that the jury resolved all conflicts in a manner that supports the verdict," Jones v. Wood, 114 F.3d 1002, 1008 (9th Cir. 1997) (citation omitted); see also Schlup v. Delo, 513 U.S. 298, 330 (1995) ("[U]nder Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review.").

Petitioner also contends that he acted in self-defense. (Petition at 8-9). While Petitioner testified that he punched Hendi only after she "trespassed [his] space" and attacked him

(RT 349-50, 355-58), the prosecution presented substantial evidence demonstrating the absence of self-defense.[10] Petitioner's self-defense claim was refuted by the following evidence: (1) Hendi, Mohkami, and Mollasalehi all testified that Petitioner threw coffee and punched Hendi after her backpack accidentally touched Petitioner (RT 47-52, 73-74, 306-10); and (2) while Hendi got into a verbal altercation with Petitioner, she never physically threatened him (RT 47, 73, 307-09). Under these circumstances, the jury could have rationally concluded that Petitioner did not reasonably believe he was in imminent danger from Hendi, or reasonably believe that immediate use of force was necessary to defend himself, and that Petitioner did not use no more force than was reasonably necessary to defend against any perceived danger. See CALCRIM 3470 ("The defendant acted in lawful self-defense if: 1. The defendant reasonably believed that he was in imminent danger of suffering bodily injury or was in imminent danger of being touched unlawfully; 2. The defendant reasonably believed that the immediate use of force was necessary to defend against that danger; AND 3. The defendant used no more force than was reasonably necessary to defend against that danger.") (as instructed, see CT 108). Therefore, the jury's finding that Petitioner's assault of Hendi was not the result of self-defense was supported by sufficient evidence. People v. Clark, 130 Cal. App. 3d 371, 378 (1982), abrogated on

_____

[10] To address Petitioner's self-defense theory, the trial court instructed the jury with CALCRIM 3470 (Right to Self-Defense or Defense of Another), CALCRIM 3471 (Right to Self-Defense: Mutual Combat or Initial Aggressor), and CALCRIM 3471 (Right to Self-Defense: May Not Be Contrived). (CT 108-09).

other grounds by People v. Blakeley, 23 Cal. 4th 82 (2000). ("Issues arising out of self-defense, including whether the circumstances would cause a reasonable person to perceive the necessity of defense, whether the defendant actually acted out of defense of himself, and whether the force used was excessive, are normally questions of fact for the trier of fact to resolve.").

**2. Count Four: Misdemeanor Battery**

Evidence of Petitioner's assault against Hendi also supported the jury's finding as to Count Four that Petitioner used "unlawful . . . force or violence," P.C. § 242, when he punched Hendi twice in the face. Indeed, throwing punches constitutes sufficient evidence to prove misdemeanor battery. Tully, 54 Cal. 4th at 1028; see generally People v. Delgado, 2 Cal. 5th 544, 583 (2017) (throwing punches amounts to misdemeanor battery). As discussed above, there was sufficient evidence for a rational juror to find that Petitioner's battery of Hendi was not the result of self-defense.

Based on the Court's independent review of the evidence presented at trial, considered in the light most favorable to the prosecution and resolving all conflicts in favor of the prosecution, the Court finds that a rational trier of fact could have found, beyond a reasonable doubt, that Petitioner used force likely to inflict great bodily injury on Hendi and that his punches to Hendi's face constituted an unlawful use of force and

violence on Hendi. Accordingly, the California Supreme Court's summary denial of Petitioner's sufficiency of the evidence claim as to counts two and four was neither contrary to, nor involved an unreasonable application of, clearly established federal law.

**D.  Assault and Battery Against Mohkami**

Petitioner contends that there was insufficient evidence to support the jury's findings in Counts Three and Five that he inflicted great bodily injury and serious bodily injury on Mohkami. (Petition at 5, 8-9).

**1.  California Court of Appeal's Opinion**

The California Court of Appeal rejected Petitioner's challenge to the sufficiency of the evidence supporting his convictions in Counts Three and five, stating:

*1.  Standard of Review*

Defendant's challenge to the sufficiency of the evidence in support of the findings of great and serious bodily injury is reviewed under a substantial evidence standard. " 'In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we "examine the whole record in the light most favorable to the judgment to

determine whether it discloses substantial evidence — evidence that is reasonable, credible and of solid value — such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] . . . "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." [Citation.] We do not reweigh evidence or reevaluate a witness's credibility. [Citation.]' ([*People v.*] *Guerra* [(2006)] 37 Cal.4th [1067,] 1129; see *People v. Lindberg* [(2008)] 45 Cal.4th [1,] 27.)" (*People v. Scott* (2011) 52 Cal.4th 452, 487.)

### 2. *Analysis*

Defendant contends that there was insufficient evidence to support the findings that defendant inflicted great bodily injury on Mohkami within the meaning of section 12022.7, subdivision (a) — count 3 — and serious bodily injury on Mohkami within the meaning of section 243, subdivision (d) — count 5. According to defendant, the cut and bruises Mohkami sustained during the altercation with defendant were not sufficient to meet the definition of great bodily injury in section

12022.7 or the definition of serious bodily injury in section 243.

Section 12022.7, subdivision (f) defines great bodily injury as "a significant or substantial physical injury." In *People v. Escobar* (1992) 3 Cal.4th 740, the Supreme Court explained that the significant or substantial injury test "contains no specific requirement that the victim suffer 'permanent,' 'prolonged,' or 'protracted' disfigurement, impairment, or loss of bodily function." (*Id*. at p. 750.) The court in *Escobar* concluded that the evidence in that case — extensive bruises and abrasions to the victim's knees and elbows, injury to her neck, and severe soreness in her vaginal area — were sufficient to support the jury's finding of great bodily injury. (*Ibid*.) According to the court, "[i]t is well-settled that the determination of great bodily injury is essentially a question of fact, not of law. ' " Whether the harm resulting to the victim . . . constitutes great bodily injury is a question of fact for the jury. [Citation.] If there is sufficient evidence to sustain the jury's finding of great bodily injury, we are bound to accept it, even though the circumstances might reasonably be reconciled with a contrary finding." ' " (*Ibid*.)

Section 243, subdivision (f)(4) defines serious bodily injury as follows: " 'Serious bodily injury'

means a serious impairment of physical condition, including, but not limited to, the following: loss of consciousness; concussion; bone fracture; protracted loss or impairment of function of any bodily member or organ; a wound requiring extensive suturing; and serious disfigurement."

When the evidence of Mohkami's injuries is viewed in a light most favorable to the jury's finding of great bodily injury in connection with the assault charged in count 3 and its finding of serious bodily injury in connection with the battery charged in count 5, it was sufficient to support those findings. Mohkami testified that as a result of the altercation with defendant, his face was bruised and he had a cut on his cheek that the school nurse said required stitches. The photographic exhibit depicting that cut shows what the prosecutor fairly described as a "gash" and the trial court described as one-inch long. By the time of trial, the cut or gash — which defendant [sic] refused to have sutured as recommended by the school nurse — had healed, leaving a visible scar that the jury was able to observe and evaluate. In addition, the school nurse advised Mohkami to go to the emergency room so that he could be evaluated for a concussion.

Given that evidence, which we cannot reweigh or reevaluate on appeal, we conclude that it was

sufficient to support the jury's findings of great and serious bodily injury. Whether Mohkami suffered great or serious bodily injury as those terms are defined by the respective statutes were fact questions within the exclusive province of the jury to resolve based on the evidence of Mohkami's injuries, evidence which, as described above, could reasonably be construed to meet the statutory definitions. (See, e.g., *People v. Escobar, supra,* 3 Cal.4th at p. 750, fn. 3 [" 'The term "great bodily injury" has been used in the law of California for over a century without further definition and the courts have consistently held that it is not a technical term that requires further elaboration. [Citations.]' "].)

(Lodgment 2 at 7-9).

## 2.   Analysis

Petitioner contends there was insufficient evidence to support the jury's finding that he inflicted great bodily injury on Mohkami.  (Petition at 5, 8-9).  The California Court of Appeal found that the following evidence introduced at trial, which demonstrated that Petitioner swung at Mohkami and punched him in the face and chest  (RT 63-64, 73-75, 86, 309-11), was sufficient to support the jury's findings of great bodily injury and serious bodily injury.

Mohkami testified that after Petitioner punched Hendi, Mohkami tried to stop the altercation but Petitioner punched him in the face a couple times. (RT 74-75). In response, Mohkami tried to punch Petitioner and then took him to the ground, at which point other bystanders separated Petitioner and Mohkami. (RT 78-79). As a result of this altercation, Mohkami sustained bruises, and his face was "tore up a bit like around half an inch." (RT 75-76). A photograph introduced into evidence depicted Mohkami's face with an open gash. (RT 75-76). Mohkami testified that he was bleeding from the open gash, which eventually scarred. (RT 64, 76). When Mohkami went to the nurse's office, he was told that he might have a concussion and advised to go to the hospital to have his cut stitched. (RT 84-85).

Hendi testified that after Petitioner hit her the second time, Mohkami intervened to prevent Petitioner from continuing to hit her. (RT 49, 64). Hendi observed Petitioner on top of Mohkami, punching him and causing him to bleed. (RT 63-64). Mollasalehi testified that after Mohkami intervened, she saw Mohkami and Petitioner fighting. (RT 310). Petitioner pulled Mohkami to the floor, punching him in the face and chest. (RT 310-11). Other bystanders began yelling, someone called security, and Petitioner tried to run away. (RT 311). Petitioner acknowledged that after Mohkami grabbed him, he threw some punches. (RT 351).

As the California Court of Appeal found, this evidence was sufficient for a rational factfinder to conclude, beyond a reasonable doubt, that in striking Mohkami in the face and chest, Petitioner used force likely to produce great bodily injury and actually inflicted great bodily injury. As discussed above, Petitioner's use of his fists to punch Mohkami was sufficient to support a conviction of assault with force likely to cause great bodily injury. <u>Aguilar</u>, 16 Cal. 4th at 1028 ("That the use of hands or fists alone may support a conviction of assault 'by means of force likely to produce great bodily injury' is well established."); <u>Chavez</u>, 268 Cal. App. 2d at 384 ("the cases are legion in holding that an assault by means of force likely to produce great bodily injury may be committed with fists"). Evidence that Mohkami suffered an open gash to his face, which was noticeably bleeding, was also sufficient for the jury to find that Petitioner actually inflicted "great bodily injury." <u>See</u> <u>People v. Washington</u>, 210 Cal. App. 4th 1042, 1047 (2012) ("lacerations, bruises, or abrasions is sufficient for a finding of 'great bodily injury' "); <u>People v. Nitschmann</u>, 35 Cal. App. 4th 677, 680, 683 (1995), <u>as modified</u> (June 6, 1995) (evidence that the victim was punched in the face and had his head rammed into a car door, causing a large gash and profuse bleeding, "was sufficient to support a 'great bodily injury' finding").

Petitioner contends that Mohkami's bruises, cut and scar do not constitute great bodily injury. (Lodgment 3 at 9). However, as the California Court of Appeal noted, P.C. § 12022.7 "contains no specific requirement that the victim suffer 'permanent,'

31

'prolonged' or 'protracted' disfigurement, impairment, or loss of bodily function." Escobar, 3 Cal. 4th at 750. Indeed, the determination of "great bodily injury" is a question of fact for the jury. Id. ("It is well settled that the determination of great bodily injury is essentially a question of fact, not of law."). It is not for this Court to reweigh the evidence presented at trial. Jones v. Wood, 207 F.3d 557, 563 (9th Cir. 2000) ("It is not enough that we might have reached a different result ourselves or that, as judges, we may have reasonable doubt."); People v. Wolcott, 34 Cal. 3d 92, 107 (1983) ("If there is sufficient evidence to sustain the jury's finding of great bodily injury, we are bound to accept it, even though the circumstances might reasonably be reconciled with a contrary finding.") (citation omitted).

Petitioner also contends that he acted in self-defense. (Petition at 8-9). While Petitioner testified that he threw punches at Mohkami only after Mohkami grabbed and punched Petitioner (RT 351), the prosecution presented substantial evidence demonstrating the absence of self-defense. Petitioner's self-defense claim was refuted by the following evidence: (1) Mohkami entered the altercation to prevent Petitioner from continuing to punch Hendi (RT 49, 64, 74-75, 310); (2) Mohkami and Hendi both testified that Petitioner punched Mohkami before Mohkami threw any punches (RT 63-64, 74-75); (3) Petitioner did not stop fighting with Mohkami until bystanders pulled them apart (RT 78-79, 311); (4) Mohkami sustained significant injuries, including bruises, bleeding, and a gash across his face (RT 47,

73, 307-09); and (5) Petitioner sustained no more than a slight injury to his face (RT 362). Under these circumstances, the jury could have rationally concluded that Petitioner did not (1) reasonably believe he was in imminent danger from Mohkami, (2) reasonably believe that immediate use of force was necessary to defend himself, and (3) use no more force than was reasonably necessary. See CALCRIM 3470. The jury could also have reasonably concluded that Petitioner did not actually and in good faith try to stop fighting with Mohkami. See Phillips v. Cano, No. EDCV 16-576O, 2017 WL 2629040, at *10 (C.D. Cal. May 5, 2017), report and recommendation adopted, No. EDCV 16-576O, 2017 WL 2622729 (C.D. Cal. June 15, 2017), appeal dismissed sub nom. Phillips v. Montgomery, No. 17-55872, 2017 WL 4216903 (9th Cir. Aug. 15, 2017) ("Petitioner has pointed to no evidence in the record suggesting he made a good faith attempt to stop fighting . . . as CALCRIM 3471 requires before an initial aggressor can regain the right to self-defense."); see also CALCRIM 3471 ("A person who engages in mutual combat or who starts a fight has a right to self-defense only if: 1. He actually and in good faith tried to stop fighting; AND 2. He indicated, by word or by conduct, to his opponent, in a way that a reasonable person would understand, that he wanted to stop fighting and that he had stopped fighting.") (as instructed, see CT 109).

Finally, the jury could have reasonably concluded that by initiating the assault on Hendi, Petitioner created the circumstances justifying Mohkami in coming to Hendi's defense.

See In re Christian S., 7 Cal. 4th 768, 773 (1994) ("It is well established that the ordinary self-defense doctrine — applicable when a defendant reasonably believes that his safety is endangered — may not be invoked by a defendant who, through his own wrongful conduct (e.g., the initiation of a physical assault or the commission of a felony), has created circumstances under which his adversary's attack or pursuit is legally justified."); see also CALCRIM 3472 ("A person does not have the right to self-defense if he or she provokes a fight or quarrel with the intent to create an excuse to use force.") (as instructed, see CT 109). Therefore, the evidence was sufficient for a rational jury to find that Petitioner's assault of Mohkami was not the result of self-defense. Clark, 130 Cal. App. 3d at 378.

The California Court of Appeal found that evidence of Petitioner's assault likely to produce great bodily injury on Mohkami also supported the jury's finding as to Count Five that Petitioner committed battery with serious bodily injury on Mohkami. "When the evidence of Mohkami's injuries is viewed in a light most favorable to the jury's finding of great bodily injury in connection with the assault charged in count 3 and its finding of serious bodily injury in connection with the battery charged in count 5, it was sufficient to support those findings." Lodgment 2 at 9. See People v. Belton, 168 Cal. App. 4th 432, 436, 440 (2008) (punches to the mouth and side of the head, causing bleeding and bruising, supported "conviction for battery with serious bodily injury"). As discussed above, there was

sufficient evidence for a rational jury to find that Petitioner's battery of Mohkami was not the result of self-defense.

Accordingly, the California Supreme Court's rejection of Petitioner's sufficiency of the evidence claim as to Counts Three and Five was not contrary to, or an unreasonable application of, clearly established federal law.

**ORDER**

For the reasons stated above, IT IS ORDERED that the Petition for Writ of Habeas Corpus is DENIED and this action is dismissed with prejudice.

DATED:  February 22, 2018

_____/S/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE